**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| PULASKI COUNTY, *et al.*, | ) | |
| | ) | CASE NO. 4:20-CV-983-jm |
| Plaintiffs, | ) | |
| | ) | (Removed from Circuit Court of |
| v. | ) | Jefferson County, Arkansas) |
| | ) | |
| WALMART INC., *et al.*, | ) | JUDGE JAMES M. MOODY JR. |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**PLAINTIFFS' MEMORANDUM**
**IN SUPPORT OF MOTION TO REMAND**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

INTRODUCTION ......................................................................................................... 1

ARGUMENT ................................................................................................................ 6

I.      LEGAL STANDARD ..........................................................................................6

II.     FEDERAL LAW DOES NOT CREATE THE CAUSE OF ACTION ...............................7

III.    THIS CASE DOES NOT "NECESSARILY RAISE" A "SUBSTANTIAL" FEDERAL
QUESTION SUFFICIENT TO CONFER FEDERAL JURISDICTION UNDER *GRABLE* ......................9

      A.     Failure to Identify Any Federal Issue "Necessarily Raised" and "Actually
Disputed" .................................................................................10

      B.     Failure to Identify a Disputed Federal Issue, Much Less a "Substantial"
One .......................................................................................12

      C.     Removal of This and Similar Cases Would Disrupt the Federal-State
Balance Approved by Congress ..........................................................15

IV.    THE COUNTIES REQUEST EXPEDITED CONSIDERATION OF THIS MOTION ...........16

CONCLUSION ...........................................................................................................17

# TABLE OF AUTHORITIES

### CASES

*Arnold v. Baxter Healthcare Corp.*,
  609 F. Supp. 2d 712 (N.D. Ohio 2009) .................................................................................. 16

*Buethe v. Britt Airlines, Inc.*,
  749 F.2d 1235 (7th Cir. 1984) .............................................................................................. 12

*Caggiano v. Pfizer, Inc.*,
  384 F. Supp. 2d 689 (S.D.N.Y. 2005) ................................................................................... 12

*Caterpillar Inc. v. Williams*,
  482 U.S. 386 (1987) ............................................................................................................ 6, 7

*Central Iowa Power Cooperative v. Midwest Independent Transmission System Operator, Inc.*,
  561 F.3d 904 (8th Cir. 2009) .............................................................................................. 6, 7

*City of Granite City v. AmerisourceBergen Drug Corp.*,
  2018 WL 3408126 (S.D. Ill. July 13, 2018) ........................................................................ 3, 14

*City of Reno v. Purdue Pharma, L.P.*,
  2018 WL 5730158 (D. Nev. Nov. 2, 2018) ............................................................................... 2

*County of Kern v. Purdue Pharma L.P.*,
  2019 WL 3310668 (E.D. Cal. July 23, 2019) ........................................................................... 3

*Delaware, ex rel. Denn, Attorney General v. Purdue Pharma L.P.*,
  2018 WL 1942363 (D. Del. Apr. 25, 2018) ..................................................................... passim

*Dinwiddie County, Virginia v. Purdue Pharma, L.P.*,
  2019 WL 2518130 (E.D. Va. June 18, 2019) ........................................................................... 2

*Dunaway v. Purdue Pharma L.P.*,
  2019 WL 2211670 (M.D. Tenn. May 22, 2019) ....................................................................... 2

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
  547 U.S. 677 (2006) ........................................................................................................... 9, 12

*Exxon Mobil Corp. v. Allapattah Services, Inc.*,
  545 U.S. 546 (2005) ............................................................................................................... 6

*Fayetteville Arkansas Hospital Co. v. Amneal Pharmaceuticals, LLC*,
  2020 WL 2521515 (W.D. Ark. May 18, 2020) ................................................................. 3, 4, 9

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
  545 U.S. 308 (2005) ........................................................................................................ passim

*Great Lakes Gas Transmission Ltd. Partnership v. Essar Steel Minnesota LLC*,
  843 F.3d 325, 329 (2016) ............................................................................................... passim

*Gully v. First National Bank in Meridian*,
  299 U.S. 109 (1936) ............................................................................................................... 7

*Gunn v. Minton*,
  568 U.S. 251 (2013) ...................................................................................................... 5, 7, 14

*Hampton Pugh Co. v. Monsanto Co.*,
2018 WL 295563 (E.D. Ark. Jan. 4, 2018) ............................................................................. 6

*In re National Prescription Opiate Litigation*,
2018 WL 4019413 (N.D. Ohio Aug. 23, 2018) ................................................................... 3, 12

*In re National Prescription Opiate Litigation*,
2019 WL 180246 (N.D. Ohio Jan. 14, 2019) ................................................................... passim

*In re National Prescription Opiate Litigation*,
2019 WL 3917575, at *1 (N.D. Ohio Aug. 19, 2019) ............................................................. 13

*International Brotherhood of Electrical Workers, Local 98 v. Democratic National Committee*,
2018 WL 487831 (E.D. Pa. Jan. 19, 2018) .............................................................................. 9

*Lester E. Cox Medical Centers v. Amneal Pharmaceuticals, LLC*,
2020 WL 3171452 (W.D. Mo. June 15, 2020) ........................................................................ 17

*Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*,
861 F.3d 206 (D.C. Cir. 2017) ................................................................................................ 13

*Mayor & City Council of Baltimore v. Purdue Pharma L.P.*,
2018 WL 1963816 (D. Md. Apr. 25, 2018) ............................................................................. 17

*McKay v. City & County of San Francisco*,
2016 WL 7425927 (N.D. Cal. Dec. 23, 2016) ........................................................................ 12

*Merrell Dow Pharmaceuticals Inc. v. Thompson*,
478 U.S. 804 (1986) ....................................................................................................... 5, 8, 15

*New Mexico, ex rel. Balderas v. Purdue Pharma L.P.*,
323 F. Supp. 3d 1242 (D.N.M. June 12, 2018) .............................................................. passim

*Nuclear Engineering Co. v. Scott*,
660 F.2d 241 (7th Cir. 1981) .................................................................................................. 12

*Pressl v. Appalachian Power Co.*,
842 F.3d 299 (4th Cir. 2016) .................................................................................................. 10

*Shamrock Oil & Gas Corp. v. Sheets*,
313 U.S. 100 (1941) ................................................................................................................. 6

*Southwood Pharmaceuticals, Inc.*,
72 Fed. Reg. 36,487 (July 3, 2007) ........................................................................................ 13

*Tucson Medical Center v. Purdue Pharma LP*,
2018 WL 6629659 (D. Ariz. Dec. 19, 2018) ............................................................................ 2

*Uintah County v. Purdue Pharma, L.P.*,
2018 WL 3747847 (D. Utah Aug. 7, 2018) ..................................................................... 3, 5, 14

*Wander v. Kaus*,
304 F.3d 856 (9th Cir. 2002) .................................................................................................. 12

*Weber County v. Purdue Pharma, L.P.*,
2018 WL 3747846 (D. Utah Aug. 7, 2018) ........................................................... 3, 12, 13, 14

*West Virginia ex rel. Morrisey v. McKesson Corp.*,
   2017 WL 357307 (S.D.W. Va. Jan. 24, 2017) ................................................................. 2, 5, 11

**STATUTES**

21 U.S.C. § 823 ........................................................................................................................ 13

**REGULATIONS**

21 C.F.R. 1301.74 ..................................................................................................................... 13

Plaintiffs, Jefferson County and Pulaski County, Arkansas (the "Counties" or "Plaintiffs") respectfully submit this Memorandum in Support of their Motion to Remand filed in response to the Notice of Removal filed by Defendants Walmart Inc., Wal-Mart Stores East, LP, WSE Management, LLC, WSE Investment, LLC, and Wal-Mart Stores East, LLC (f/k/a Wal-Mart Stores East, Inc.) (collectively, "Walmart") (ECF No. 1). For the reasons set forth below, this Court lacks subject matter jurisdiction over this action, and Plaintiffs request that this Court remand this matter back to the Circuit Court of Jefferson County, Arkansas.

## INTRODUCTION

Despite a raft of federal cases that have remanded the same types of cases in the same situations, Walmart seeks to defy the uniform action of the federal courts by removal of this action. Many state court cases have been filed against opioid manufacturers, distributors, and retailers around the country. These opioid defendants have regularly sought to remove state court actions to federal court so they could be transferred to and tangled up in the federal multi-district litigation case for opioid claims, *In re National Prescription Opiate Litigation*, MDL 2804 (N.D. Ohio) (the "MDL"). By so doing, defendants hope that the cases will languish in a pile of thousands of cases. Fortunately, the district courts around the country have rejected these efforts and have routinely remanded similar actions against similar defendants making substantially the same claims as here. Indeed, not only have other district courts rejected arguments like Walmart's, Judge Dan Polster, who presides over the MDL, has also rejected the same arguments as Walmart makes here. Plaintiffs request that this Court join the other district courts, including Judge Polster, that have uniformly remanded claims like this one back to state court.

Plaintiffs also seek expedited review. Given the trove of cases that have rejected Walmart's same arguments, the Court's task should be fairly straightforward. Many of the cases are cited below. The remand decisions in opioid cases will be underlined below to highlight just how many

there are.  Plaintiffs request quick consideration in the face of Walmart's meritless removal and the risk that their case will effectively be stayed indefinitely absent remand.

On July 21, 2020, the Counties sued Walmart in the Circuit Court of Jefferson County, Arkansas.  That is where this action belongs.  The Complaint asserts claims based *exclusively* on Arkansas statutory and common law:  negligence/gross negligence (¶¶ 161-83); common law public nuisance (¶¶ 184-99); violations of the Arkansas Uniform Narcotic Act (¶¶ 200-09); accomplice liability for violations of the Arkansas Uniform Narcotic Drug Act (¶¶ 210-17); violations of the Arkansas Controlled Substances Act (¶¶ 218-27); accomplice liability for violations of the Arkansas Controlled Substances Act (¶¶ 228-35); and violations of the Arkansas Drug Dealer Liability Act (¶¶ 236-47).[1]

Walmart filed its Notice of Removal on August 20, 2020.  ECF No. 1.  Notwithstanding the absence of a federal claim, Walmart purports to invoke this Court's federal question jurisdiction under 28 U.S.C. § 1331.  In doing so, it mischaracterizes the Counties' claims and it is therefore no surprise that courts in the opioids litigation have routinely rejected the same arguments Walmart makes here.[2]  To Plaintiffs' knowledge, although dozens of cases alleging

---

[1]      References to "¶ _" are to paragraphs of the Complaint, attached as Exhibit 1 to the Notice of Removal.

[2]      *See, e.g.*, *New Mexico, ex rel. Balderas v. Purdue Pharma L.P.*, 323 F. Supp. 3d 1242 (D.N.M. June 12, 2018); *Delaware, ex rel. Denn, Att'y Gen. v. Purdue Pharma L.P.*, 2018 WL 1942363 (D. Del. Apr. 25, 2018); Mem. Op. & Order, *West Virginia v. McKesson Corp.*, No. 2:17-cv-03555 (S.D.W. Va. Feb. 15, 2018), ECF No. 21 (attached as **Ex. A**); *West Virginia ex rel. Morrisey v. McKesson Corp.*, 2017 WL 357307 (S.D.W. Va. Jan. 24, 2017); *Dinwiddie Cnty., Va. v. Purdue Pharma, L.P.*, 2019 WL 2518130 (E.D. Va. June 18, 2019); Mem. Op. & Order, *Cnty. Bd. of Arlington Cnty. v. Purdue Pharma, L.P.*, No. 1:19-cv-00402 (E.D. Va. May 6, 2019), ECF No. 63 (attached as **Ex. B**); Order on Mot. to Remand & Mot. to Stay, *City of Boston v. Purdue Pharma L.P.*, No. 1:18-cv-12174 (D. Mass. Jan. 29, 2019), ECF No. 32 (attached as **Ex. C**); *Dunaway v. Purdue Pharma L.P.*, 2019 WL 2211670 (M.D. Tenn. May 22, 2019); *In re Nat'l Prescription Opiate Litig.*, MDL 2804, 2019 WL 180246 (N.D. Ohio Jan. 14, 2019); *Tucson Med. Ctr. v. Purdue Pharma LP*, 2018 WL 6629659 (D. Ariz. Dec. 19, 2018); *City of Reno v. Purdue Pharma, L.P.*, 2018 WL 5730158 (D. Nev. Nov. 2, 2018); *Weber Cnty. v. Purdue Pharma, L.P.*,

violations implicating the CSA are pending in state courts, not one of them has been removed to or remained in federal court on the basis of federal question jurisdiction.  These decisions, in similar cases alleging the same facts and similar state and common law claims, reject precisely the arguments for federal jurisdiction raised here.  Of particular note, Judge Polster has already rejected similar federal jurisdictional arguments in another opioids case and ordered the case remanded to state court.  *See* _In re Nat'l Prescription Opiate Litig._, 2019 WL 180246, at *2 ("Walgreens cannot meet its burden of showing that removal of Kentucky's case was proper under either the well-pleaded complaint rule or the *Grable* test.").  Likewise, the consolidated Arkansas opioids litigation is pending in state court, and has not been removed despite the similarity in allegations as here.  *See Arkansas ex rel. Rutledge v. Purdue Pharma L.P.*, No. 60 CV-18-2018 (Pulaski Cnty. Cir. Ct.).  Earlier this year, Judge Timothy Brooks rejected similar arguments as those advanced by Walmart, remanding a case against opioid defendants even though "Plaintiffs rely on duties arising out of the federal [CSA] as the basis for at least some of their state-law claims."  _Fayetteville Ark. Hosp. Co. v. Amneal Pharms., LLC_, 2020 WL 2521515, at *2 (W.D. Ark. May 18, 2020).  Judge Brooks further observed that:

> [T]he Court cannot conclude that the CSA is necessarily raised nor substantially implicated by the pleadings.  Plaintiffs have relied on state statutory and common law theories for each of their claims.  Ultimately, a court may conclude that Plaintiffs have not pled an adequate basis for the duties they ascribe to Defendants,

---

2018 WL 3747846 (D. Utah Aug. 7, 2018); _Uintah Cnty. v. Purdue Pharma, L.P._, 2018 WL 3747847 (D. Utah Aug. 7, 2018); _City of Granite City. v. AmerisourceBergen Drug Corp._, 2018 WL 3408126 (S.D. Ill. July 13, 2018); Order, _Cnty. of Anderson v. Rite Aid of S.C., Inc._, No. 8:18-cv-01947 (D.S.C. Aug. 20, 2018), ECF No. 44 (attached as **Ex. D**); _Cnty. of Kern v. Purdue Pharma L.P._, 2019 WL 3310668 (E.D. Cal. July 23, 2019); Civil Mins., _City of El Monte v. Purdue Pharma L.P._, No. 2:19-cv-03588-JFW-PLA (C.D. Cal. June 18, 2019), ECF No. 38 (attached as **Ex. E**); *see also* _In re Nat'l Prescription Opiate Litig._, MDL 2804, 2018 WL 4019413 (N.D. Ohio Aug. 23, 2018); Order, _Oklahoma, ex rel., Hunter v. Purdue Pharma L.P._, No. 5:18-cv-00574-M (W.D. Okla. Aug. 3, 2018), ECF No. 53 (attached as **Ex. F**).

but that will be a matter of state law and will not require any interpretation or application of the CSA.

*Id.*

Given that the MDL Court has already rejected these jurisdictional arguments, Walmart's motive for its attempt at removal is transparent: to delay. Walmart's Notice of Removal repeatedly cites the pendency of *In re National Prescription Opiate Litigation*, MDL 2804, as a basis for removal. With limited exceptions, the MDL Court has stayed all briefing of remand issues, so improperly removed cases transferred to the MDL will simply sit in abeyance while that Court proceeds with its bellwether trials. *See, e.g.*, Notice of Removal ¶¶ 11, 12, 14, 28, 44. Federal courts are courts of limited jurisdiction, however, and Walmart's desire that this case be stayed as part of the MDL is not a means to manufacture federal jurisdiction where none otherwise exists. The MDL court has already indicated how it would rule on the same arguments, and transfer to a court which lacks jurisdiction over this matter would be a waste of time and resources for the courts and the parties alike.[3]

On the merits, Walmart's jurisdictional argument fails for at least three reasons. First, under the well-pleaded complaint rule, to confer subject matter jurisdiction a federal question must be raised by the plaintiff's complaint. Here, the Counties exclusively plead common law and state statutory claims.

---

[3]     Another defendant in the opioid litigation, McKesson Corp., tacitly acknowledged that its similar argument for removal was without merit. McKesson removed an action by the State of Kentucky to federal court, asserting similar arguments as in Walmart's Notice of Removal in this case. After the MDL court, which has otherwise stayed any remand filings, then positioned Kentucky's remand motion as one of two slated for decision in an Order Regarding Remand Briefing, *In re Nat'l Prescription Opiate Litig.*, MDL 2804, ECF No. 677, McKesson submitted a Notice of Consent to Remand before a decision could issue, *see* ECF No. 736 (attached as **Ex. G**).

Second, Walmart cannot carry its burden of showing that the Counties' state law claims could have been brought in federal court under the test set forth in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), and *Gunn v. Minton*, 568 U.S. 251 (2013). In this case, there is no substantial, disputed, and necessary federal issue warranting federal jurisdiction. Courts have consistently rejected arguments that allegations concerning claimed violations of the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.* provided a basis for federal jurisdiction. *See, e.g.,* _Denn_, 2018 WL 1942363, at *4; _Balderas_, 323 F. Supp. 3d at 1252-53; _West Virginia_, No. 2:17-cv-03555, ECF No. 21 at 13-14; *see also* _Morrisey_, 2017 WL 357307, at *7-9; _In re Nat'l Prescription Opiate Litig._, 2019 WL 180246, at *1-2; _Uintah Cnty._, 2018 WL 3747847, at *5 ("Plaintiffs assert only state law claims, and provide bases for the claims which do not arise out of or necessarily depend on an interpretation of a disputed CSA provision."). This is because such allegations are "insufficiently 'substantial' to confer federal-question jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 814 (1986).

Third, allowing removal of state law claims such as this, which are routinely tried in state court, would upset the state-federal jurisdictional balance. While many cases are consolidated in the MDL, plaintiffs are masters of their own complaints, and litigation against opioid distributors and/or manufacturers also is pending in state courts across the country including two in Pulaski County, Arkansas, one in Crittenden County, Arkansas, and one in Washington County, Arkansas.

Accordingly, given the urgent public health crisis the Counties face and the risk that delay will effectively stay the Counties' action, Plaintiffs respectfully request that this case promptly be remanded to state court where it belongs.

## ARGUMENT

### I.    LEGAL STANDARD

It is axiomatic that the federal courts are "courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005). "Removal based on 'federal-question jurisdiction is governed by the "well-pleaded-complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'" *Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Courts are obliged to construe removal jurisdiction strictly, resolving all doubts in favor of remand. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Hampton Pugh Co. v. Monsanto Co.*, 2018 WL 295563, at *2 (E.D. Ark. Jan. 4, 2018) (remanding action and noting the "strict construction of the removal statutes"). The same court to which Walmart ultimately seeks to transfer this action (the federal MDL) also applies strict construction and resolves any doubts in favor of remand. *See In re Nat'l Prescription Opiate Litig.*, 2019 WL 180246, at *2 ("Courts are obliged to strictly construe removal jurisdiction against removal and all doubts should be resolved in favor of remand.").

In determining whether removal is proper, the Eighth Circuit has held that "we first address whether federal law creates the cause of action . . . and we next address whether [plaintiff]'s right to relief necessarily depends on resolution of a substantial question of federal law." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (2016). In order to establish federal jurisdiction under *Grable*, the federal issue implicated in state law litigation must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S.

at 258 (2013).   In considering this "[c]ritically, the party seeking removal has the burden to establish federal subject matter jurisdiction; all doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power*, 561 F.3d at 912 (citations omitted).

## II.   FEDERAL LAW DOES NOT CREATE THE CAUSE OF ACTION

Under long-settled precedent, federal question jurisdiction can only exist when a significant question of federal law is raised by plaintiffs' causes of action; a federal question raised by an anticipated defense is not sufficient to confer jurisdiction. *Caterpillar*, 482 U.S. at 392-93. Here, there is no federal jurisdiction because the Counties rely exclusively on state law for their claims.   The Counties plead claims for negligence/gross negligence (¶¶ 161-83); common law public nuisance (¶¶ 184-99); violations of the Arkansas Uniform Narcotic Act (¶¶ 200-09); accomplice liability for violations of the Arkansas Uniform Narcotic Drug Act (¶¶ 210-17); violations of the Arkansas Controlled Substances Act (¶¶ 218-27); accomplice liability for violations of the Arkansas Controlled Substances Act (¶¶ 228-35); and violations of the Arkansas Drug Dealer Liability Act (¶¶ 236-47).   While a violation of the federal CSA may well constitute evidence of one or more of the plaintiffs' state law causes of action, proof of such a federal law violation is not an "essential element" of any of the claims.   *See Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112 (1936).   To confer "arising-under" jurisdiction, "a right or immunity created by the Constitution or laws of the United States must be an element, ***and an essential one***, of the plaintiff's cause of action." *Id.* (emphasis added).

Moreover, as Walmart acknowledges, "the CSA does not provide for a private right of action."   Notice of Removal ¶ 43. That is, Congress has expressed its intent that these cases not be litigated in federal court. Here, because there is no private right of action to enforce the CSA, "there is no indication of legislative intent to create a federal cause of action displacing traditional state law . . . causes of action." *Great Lakes*, 843 F.3d at 331.   The Supreme Court's ruling in

*Merrell Dow* is instructive.  There, plaintiffs brought state common law causes of action against the manufacturer of Bendectin.  Plaintiffs alleged, *inter alia*, that Merrell Dow's violation of the misbranding provisions of the federal Food, Drug, and Cosmetic Act ("FDCA") gave rise to a rebuttable presumption of negligence under state law.  The Supreme Court nevertheless found no basis for federal question jurisdiction.  Central to the Supreme Court's conclusion was the recognition that Congress had not created a private federal remedy for violations of the FDCA (which is also true of the CSA).  *See Merrell Dow*, 478 U.S. at 814 ("We simply conclude that the congressional determination that there should be no federal remedy for the violation of this federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction.").[4]

In similar opioid litigation, the Southern District of West Virginia found that the absence of a private cause of action under the CSA weighed heavily in favor of remanding the case.  *See West Virginia*, No. 2:17-cv-03555, ECF No. 21.  Similarly, the <u>*Balderas*</u> court explained in remanding the New Mexico opioid action:  "Plaintiff's Complaint does not allege a federal cause of action under the FCSA—nor could it have because the FCSA provides no federal cause of action."  323 F. Supp. 3d at 1250.

---

[4]      As the Supreme Court subsequently explained, the decision in *Merrell Dow* was also motivated by a concern that recognition of federal question jurisdiction under these circumstances would disturb the balance of federal and state judicial responsibilities approved by Congress.  *See Grable*, 545 U.S. at 318 ("[I]f the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action.  And that would have meant a tremendous number of cases."); *see also Great Lakes*, 843 F.3d at 331 ("Because federal law does not create the cause of action identified in the FAC, federal question jurisdiction may not rest on this basis.").

Here, too, the Counties assert only causes of action arising under Arkansas statutory and common law; they did not—and could not—assert a claim under the CSA.  *See Fayetteville Ark. Hosp.*, 2020 WL 2521515, at *2 (noting plaintiffs' claims "will be a matter of state law and will not require any interpretation or application of the CSA").

## III.   THIS CASE DOES NOT "NECESSARILY RAISE" A "SUBSTANTIAL" FEDERAL QUESTION SUFFICIENT TO CONFER FEDERAL JURISDICTION UNDER *GRABLE*

Walmart seeks to invoke the narrow exception recognized by the Supreme Court in *Grable* for a "special and small category of cases" in which "federal-question jurisdiction will lie over state-law claims that implicate significant federal issues."  545 U.S. at 312; *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (characterizing cases in which federal jurisdiction may be found under *Grable* as a "slim category"); *In re Nat'l Prescription Opiate Litig.*, 2019 WL 180246, at *2 (describing such cases as a "special and small category").

As explained above, numerous federal courts—addressing precisely the same argument in opioids litigation—have rejected defendants' assertion that federal jurisdiction existed under the four-part *Grable* test.  Courts have repeatedly found that the federal issue identified by Walmart was "not necessarily raised, substantial, or possible to entertain without disrupting the congressionally-approved balance between state and federal courts."  *Denn*, 2018 WL 1942363, at *2-5; *see also Balderas*, 323 F. Supp. 3d at 1250-53; *West Virginia*, No. 2:17-cv-03555, ECF No. 21 at 3; *In re Nat'l Prescription Opiate Litig.*, 2019 WL 180246, at *2 ("Walgreens cannot meet its burden of showing that removal of Kentucky's case was proper under either the well-pleaded complaint rule or the *Grable* test.").  The same analysis yields the same result here.[5]

---

[5]      Although the foregoing rulings concerned actions by states, the same federal-question analysis applies in this case.  There is no functional difference in federal question jurisdiction, which relates to the nature of the claim, not the identity of the party.  *See Int'l Brotherhood of Elec.*

A. **Failure to Identify Any Federal Issue "Necessarily Raised" and "Actually Disputed"**

As Walmart tacitly acknowledges, the Counties can prove their case simply by proving the elements of their state law causes of action. *See* Notice of Removal ¶ 7 (acknowledging that the Counties expressly plead state law statutory and common law claims). To the extent the paragraphs Walmart cites reference CSA violations, they also include allegations that Walmart had state law duties to, among other things, report and halt suspicious orders and maintain effective controls against diversion. For example, the Counties' negligence and gross negligence claims (Count I) identify Arkansas common law and statutory law, ¶¶ 163-64, 166-72; the Counties identify common law and Arkansas statutes as the basis of their public nuisance claim (Count II), ¶¶ 184, 187, 190-91, 194-95; and the Counties' statutory claims (Counts III-VII) relate exclusively to violations of Arkansas statutes, ¶¶ 201-07, 211-12, 219-25, 229-30, 241-45. It is clear each claim is not only predicated on state law, but that to the extent a statutory standard is referenced, the Counties' claims may be established based on violations of state law duties. *See Pressl v. Appalachian Power Co.*, 842 F.3d 299, 304 (4th Cir. 2016) ("[A] claim 'necessarily depends on a question of federal law only when <u>every</u> legal theory supporting the claim requires the resolution of a federal issue.'").

Furthermore, even when state laws parallel or integrate federal standards or statutes, they do not justify federal jurisdiction. *See* <u>Balderas</u>, 323 F. Supp. 3d at 1246 (finding this prong of the *Grable* analysis unsatisfied in opioid case in which the State of New Mexico alleged that state law "parallel[ed]" federal requirements and described certain state law duties that incorporated federal standards or required compliance with both federal and state law). Indeed, under identical

---

*Workers, Local 98 v. Democratic Nat'l Comm.*, 2018 WL 487831, at \*5 (E.D. Pa. Jan. 19, 2018) ("Federal-question jurisdiction concerns controversies, not parties.").

circumstances in other opioid litigation, courts uniformly have found that the federal issue of whether a defendant violated its obligations under the federal CSA was not "necessarily raised." In _Denn_, the Delaware court reasoned:

> Although a determination of whether Defendants violated the FCSA may occur while addressing Plaintiff's claims, there is also the possibility that the claims will be resolved without resolution of the federal issue at all.  Based on the complaint, it is possible for the state law claims to be resolved solely under state law.  Although the complaint addresses some duties or requirements under the FCSA, the complaint also lists several other duties and standards that arise solely under state statutory or common law.

2018 WL 1942363, at *2 (citation omitted).  In particular, the Delaware court concluded that the state could prevail on its Delaware Consumer Fraud Act claim based on alleged misrepresentations "unrelated to federal law," on its public nuisance claim "by showing Defendants violated the Delaware Controlled Substances Act," and on its negligence claim by showing conduct that fell below standards of care that did not reference federal law.  _Id._ at *3.

> The _Balderas_ court engaged in an identical analysis:

> [C]ontrary to McKesson's claim that Plaintiff can prevail only by showing that Defendants violated the FCSA, it appears that Plaintiff could show that Defendants violated state law duties to control, report and guard against the diversion of prescription drug orders, meaning that the federal statute is not necessarily raised. While a determination of a duty and violation of that duty under the FCSA will likely occur in examining Plaintiff's claims, so also will examination of New Mexico common law, statutes, and promulgated rules to determine Defendants' duty, if any, to prevent "diversion" of prescription drugs into illicit channels. . . . New Mexico state law provides alternate theories for a finding of liability against McKesson and its codefendants because the Complaint implicates numerous alleged duties under state law.  Thus, as in _Merrell Dow_, the Complaint refers to the FCSA, its regulations, and the DEA letters as "available criter[ia] for determining whether" Defendants are liable, but their liability, if any, does not hinge _exclusively_ on federal law, as McKesson argues.

323 F. Supp. 3d at 1252 (citations omitted).[6]

---

[6]    _See also West Virginia_, No. 2:17-cv-03555, ECF No. 21 at 12 ("The earlier remand decision focused extensively on whether the alleged federal issue was necessarily raised and Judge Copenhaver rightly concluded that it was not."); _Morrisey_, 2017 WL 357307, at *4-8; _accord_

Likewise here, because Walmart may be found liable on the Counties' claims based on allegations that do not require violations of federal law, no federal issue is "necessarily raised" under the first prong of the *Grable* test.[7]

### B. Failure to Identify a Disputed Federal Issue, Much Less a "Substantial" One

Moreover, *Grable* jurisdiction is reserved for almost pure questions of law, such as the interpretation of the IRS notice requirement at issue in that case. By contrast, "[n]o substantial federal issue will be found where a claim is 'fact-bound and situation-specific.'" *McKay v. City & Cnty. of S.F.*, 2016 WL 7425927, at *4 (N.D. Cal. Dec. 23, 2016) (quoting *Empire HealthChoice*, 547 U.S. at 700); *see also Great Lakes*, 843 F.3d at 332 ("[T]here is little national interest in having a federal court interpret . . . provisions if it will merely apply state law.").

Here, it is hard to imagine a more fact-bound inquiry than Walmart's dispute over whether it violated state law standards of care. Even assuming a federal question were necessarily

---

*Oklahoma*, No. 5:18-cv-00574, ECF No. 53 (applying *Grable* and finding that a federal question was not necessarily raised, such that it was unnecessary to consider the remaining factors and remanding case removed by an opioid manufacturer); *In re Nat'l Prescription Opiate Litig.*, 2018 WL 4019413, at *3 (concluding that "no federal issue [wa]s necessarily raised" in the State of Montana's lawsuit against an opioid manufacturer, and noting that the plaintiff was in no way asking the court to second guess the validity of the Food and Drug Administration's drug-labeling or decision-making); *see also Weber Cnty.*, 2018 WL 3747846, at *6 ("McKesson fails to identify a specific provision in the CSA which will require interpretation or construction by any court.").

[7]       These decisions are fully consistent with authority outside the opioid context as well. Even if the Complaint relies on state law that incorporates federal requirements, as opposed to including the independent duties also cited, a federal question still would not be necessarily raised. *See Buethe v. Britt Airlines, Inc.*, 749 F.2d 1235, 1239 (7th Cir. 1984) ("[A] claim does not arise under federal law merely because a state law incorporates federal law by reference."); *Nuclear Eng'g Co. v. Scott*, 660 F.2d 241, 249 (7th Cir. 1981) ("[S]tate law incorporation of federal law does not fairly allow . . . state law claims to be construed as essentially federal in character."); *see also Wander v. Kaus*, 304 F.3d 856, 858-59 (9th Cir. 2002) (finding state law claim based on violation of federal Americans with Disabilities Act did not give rise to federal question jurisdiction and describing issue as "materially indistinguishable from *Merrell Dow*"); *Caggiano v. Pfizer, Inc.*, 384 F. Supp. 2d 689, 691 (S.D.N.Y. 2005) (granting remand when "federal standards merely inform the content of classically state-law duties such as avoiding negligence and fraud").

presented, "[t]he [Supreme] Court has cautioned that it takes more than a federal element to open the arising under door." *West Virginia*, No. 2:17-cv-03555, ECF No. 21 at 9 (internal quotation marks omitted). Here, Walmart's arguments are precisely the kind of fact-bound disputes (resting on a mischaracterization of the Complaint), that caution against removal. *See, e.g.*, *Weber Cnty.*, 2018 WL 3747846, at *8 ("[O]n their face, the issues McKesson recites appear 'fact bound' and 'situation specific,' auguring against federal jurisdiction."); *Cnty. of Anderson*, No. 8:18-cv-01947, ECF No. 44 at 20 ("[D]etermination of the Distributor Defendants' compliance with their putative duties to detect, report, and stop shipment of 'suspicious orders,' as defined in the federal regulations, is necessarily fraught with 'fact-bound and situation-specific' inquiries, favoring a finding against substantiality.").

The scope of the duties of distributors and dispensers of opioids under the CSA has long been clear. The decision in *Masters Pharmaceutical, Inc. v. Drug Enforcement Administration*, 861 F.3d 206 (D.C. Cir. 2017), cited by Walmart, conclusively resolved any challenge to the interpretation of that law. Further, the requirements at issue have been well-established for years. *See Southwood Pharms., Inc.*, 72 Fed. Reg. 36,487-01 (July 3, 2007); 21 U.S.C. § 823; 21 C.F.R. 1301.74. *See also In re Nat'l Prescription Opiate Litig.*, MDL 2804, 2019 WL 3917575, at *1 (N.D. Ohio Aug. 19, 2019) (granting motion for summary judgment holding defendants have affirmative duties under the CSA).

Accordingly, it is no surprise that courts have consistently found that the federal issue identified by Walmart was not "substantial" enough to justify federal jurisdiction. As *Merrell Dow*

explained, the absence of a federal cause of action by itself strongly demonstrates the absence of any substantial issue. Moreover, as the court in *Denn* elaborated:

> Federal issues must be significant "to the federal system as a whole." *Gunn*, 568 U.S. at 260. "[I]t is not enough that the federal issue be significant to the particular parties in the immediate suit." *Id.* . . .
>
> The determination of whether Defendants violated the FCSA is not substantial to the government as a whole. Most importantly, the parties do not seek to interpret the FCSA such that it affects the manner in which the government operates. . . . Rather, the federal issues in this case will be substantial only to the parties. The outcome will not necessarily be dispositive of Plaintiff's claims and will not be controlling in any other case, as it will involve a factual determination relating to Defendants' conduct.

2018 WL 1942363, at *4. The *Balderas* court concurred, adding that the fact that "Plaintiff's claims will be 'fact-bound and situation-specific' and do not readily present a pure issue of law which federal adjudication could resolve 'once and for all,'" as well as "'the absence of a private right of action' under the FCSA" were additional factors that weighed against a finding of substantiality. 323 F. Supp. 3d at 1252. Likewise, the Southern District of West Virginia has twice found the absence of any substantial federal question, reasoning that "[t]he federal courts have little interest in deciding cases involving West Virginia's Uniform Controlled Substances Act and West Virginia's negligence and public nuisance law," holding that this is the case "even if violation of a federal statute or standard is an element of the claims." *West Virginia*, No. 2:17-cv-03555, ECF No. 21 at 14.[8]

---

[8]     *See also Granite City*, 2018 WL 3408126, at 2 ("[T]he City's claims do not raise a larger substantial federal interest, nor do they implicate 'the action of any federal department, agency, or service.'"); *Weber Cnty.*, 2018 WL 3747846, at *13-14 (agreeing that McKesson's argument cannot be squared with Supreme Court precedent on this issue); *Uintah Cnty.*, 2018 WL 3747847, at *7 (same); *Cnty. of Anderson*, No. 8:18-cv-01947, ECF No. 44 at 19 ("[T]he federal issue . . . does not rise to the level of federal importance envisioned by *Grable*'s third factor, and is therefore not 'substantial' in the way necessary to invoke federal question jurisdiction.").

In sum, Walmart's alleged violations of the federal CSA were insufficiently substantial to support federal jurisdiction under *Grable* in more than a dozen other actions, and are equally insufficient to support federal jurisdiction here.

### C.   Removal of This and Similar Cases Would Disrupt the Federal-State Balance Approved by Congress

Finally, removal of this and similar cases would undoubtedly "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.   In *Grable*, the Supreme Court strongly distinguished between state tort claims based on federal standards (as here) from the narrow (though substantial) tax notice issue it allowed to be removed, holding that:

> For if the federal [drug] labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action.   And that would have meant a tremendous number of cases.
>
> One only needed to consider the treatment of federal violations generally in garden variety state tort law. . . . A general rule of exercising federal jurisdiction over state claims resting on federal mislabeling and other statutory violations would thus have heralded a potentially enormous shift of traditionally state cases into federal courts.

545 U.S. at 318-19 (citing *Merrell Dow*, 478 U.S. at 811-12).

Just because the state court here may have occasion to consider the CSA as part of the Counties' claims does not change this.   As the <u>*Denn*</u> court explained:

> Here, much like *Merrell Dow*, entertaining "garden variety" state law tort claims resting on federal statutory violations, such as negligence and fraud, could lead to a flood of state law claims entering federal courts and could disturb congressional intent regarding federal question jurisdiction in § 1331.   Considering this potential threat to the structural division of labor between state and federal courts, in addition to the absence of a federal cause of action, it is "improbable that the Congress . . . would have meant to welcome any state-law tort case implicating federal law" merely because the federal statutes create standards of care or elements to causes of action under state law.   Thus, the Court cannot entertain Plaintiff's state law

claims without disturbing the congressionally-approved division of labor between federal and state courts.

2018 WL 1942363, at *5 (alteration in original) (quoting in part *Grable*, 545 U.S. at 319); *see also* Balderas, 323 F. Supp. 3d at 1252-53 (quoting and following reasoning in *Denn*); West Virginia, No. 2:17-cv-03555, ECF No. 21 ("The federal courts have little interest in exercising jurisdiction over claims alleging violation of state statutory and common law – even where resolution of such claims might involve a 'federal element'.  To do so would shift a significant number of garden-variety state law claims into a federal forum, thereby upsetting the congressionally intended division between state and federal courts.").  The Eighth Circuit is in accord:  "'[T]he combination of no federal cause of action and no preemption of state remedies' serves as an 'important clue' suggesting a congressionally approved balance *disfavoring* federal involvement." *See Great Lakes*, 843 F.3d at 334 (quoting *Grable*, 545 U.S. at 318)).

In a case such as this, where removal would invite any claims involving any reference to CSA duties, or duties under other federal statues, into federal courts across the country, accepting federal jurisdiction "wouldn't just upset the balance Congress intended to exist between the federal and state judiciaries—it would eliminate it."  *Arnold v. Baxter Healthcare Corp.*, 609 F. Supp. 2d 712, 718 (N.D. Ohio 2009) (applying *Grable* to alleged federal question based on FDA drug regulation).

## IV.   THE COUNTIES REQUEST EXPEDITED CONSIDERATION OF THIS MOTION

Walmart had no legitimate basis for removing this action to federal court.  Its motives for doing so are readily transparent:  Walmart wants to tie up the Counties' lawsuit in the federal MDL and avoid timely consideration of their claims.  The Counties' opioid crisis is far too serious for this case to meet such a fate.  Absent expedited consideration, that is a distinct possibility given the MDL court has issued an order stating it will not consider motions for remand.

As courts that have considered similar requests in the opioids litigation have noted, expeditious consideration of remand requests are proper. *See, e.g.*, *Lester E. Cox Med. Centers v. Amneal Pharms., LLC*, 2020 WL 3171452, at *1 (W.D. Mo. June 15, 2020) ("Plaintiffs filed their motion to remand, and expedited briefing was ordered."); *Mayor & City Council of Balt. v. Purdue Pharma L.P.*, 2018 WL 1963816, at *3 (D. Md. Apr. 25, 2018) ("The City contends that the Court should rule on its Motion expeditiously because this case does not belong in federal court and, therefore, should not be transferred to the MDL.  The Court agrees with the City.").  The Counties therefore respectfully urge the Court to expedite its consideration of this Motion to Remand.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this case be remanded to the Circuit Court of Jefferson County, Arkansas and that the Court consider the Counties' motion on an expedited basis.[9]

Dated:  August 24, 2020                                  Respectfully submitted,


Scott Richardson
Dustin McDaniel
**McDANIEL, WOLFF & BENCA, PLLC**
1307 W. Fourth Street
Little Rock, AR 72201
Tel: (501) 954-8000
Fax: (866) 419-1601
dmcdaniel@mwbfirm.com
scott@mwbfirm.com

*Counsel for Pulaski County, Arkansas and*
*Jefferson County, Arkansas*

---

[9]    Plaintiffs are aware that the Court has notified parties in other litigation before it of the Court's relationship with counsel for Walmart as a potential issue for recusal.  Plaintiffs are confident that the Court can objectively decide this matter and do not request recusal.

Linda Singer (Pro Hac Vice to be submitted)
Elizabeth Smith (Pro Hac Vice to be submitted)
Sara Aguiñiga (Pro Hac Vice to be submitted)
**MOTLEY RICE LLC**
401 9th Street NW, Suite 1001
Washington, DC 20004
Tel: (202) 849-4965
Fax: (202) 386-9622
lsinger@motleyrice.com
esmith@motleyrice.com
saguiniga@motleyrice.com

*Counsel for Pulaski County, Arkansas and Jefferson County, Arkansas*