**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

PULASKI COUNTY, *et al.*,

    *Plaintiffs*,

v.                                    Case No.: 4:20-CV-00983-JM

WALMART INC., *et al.*,

    *Defendants*.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY PROCEEDINGS PENDING ANTICIPATED TRANSFER TO MULTIDISTRICT LITIGATION

Defendants Walmart Inc., Wal-Mart Stores East, LP, WSE Management, LLC, WSE Investment, LLC, and Wal-Mart Stores East, LLC (f/k/a Wal-Mart Stores East, Inc.) (collectively, "Walmart") respectfully submit this Memorandum of Law in support of their motion requesting that this Court order a temporary stay of these proceedings until the Judicial Panel on Multidistrict Litigation ("JPML") renders a final decision on whether to transfer this case to the Opiate Multidistrict Litigation pending in the Northern District of Ohio, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804 (N.D. Ohio) ("Opiate MDL").  A proposed order to temporarily stay the proceedings is attached.

### INTRODUCTION

This action is one of more than 2,800 related lawsuits asserting claims against manufacturers, distributors, and/or pharmacies arising out of the sale, marketing, and/or distribution of prescription opioid medications.  Plaintiffs Pulaski County and Jefferson County (together, "Plaintiffs") are two Arkansas counties seeking damages for opioid-related costs they allegedly incurred in addressing the opioid epidemic.

On December 5, 2017, the JPML created the Opiate MDL for cases just like this one—cases in which plaintiffs allege that "distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (J.P.M.L. 2017). Thousands of lawsuits have been transferred to the Opiate MDL. And as new lawsuits are filed across the country each week, the JPML continues to transfer actions like this one. Scores of judges across the country have stayed or administratively closed opioid cases that were removed on federal-question grounds while the JPML finalized its transfer decision. *See* ECF No. 1, Ex. 9. All of those cases are now in the Opiate MDL.

On August 28, 2020, the JPML entered a conditional transfer order ("CTO"), concluding this case appears to "involve questions of fact that are common to the actions previously transferred to the Northern District of Ohio and assigned to Judge Polster." JPML ECF No. 8389 at *1, (attached as **Exhibit 10**). Following its normal procedure, the JPML temporarily stayed that order to allow Plaintiffs the opportunity to file an opposition. *Id.* And as with the thousands of cases before this one, at one of its upcoming hearings the JPML will ultimately order the case transferred to the Opiate MDL. There, the Honorable Dan A. Polster, the judge presiding over the Opiate MDL, will consider and resolve Plaintiffs' motion to remand along with the scores of motions by other plaintiffs presenting substantially similar issues.

This Court should stay this case pending the JPML's imminent decision finalizing its transfer order. A brief stay is necessary to promote judicial economy and will cause minimal—if any—prejudice to Plaintiffs, and denying a stay will cause significant harm to Walmart.

A stay is also appropriate should the Court elect to conduct a "preliminary assessment" of its jurisdiction. Courts conducting a "preliminary assessment" analyze "whether there is any reasonable possibility that federal jurisdiction exists." *City of Henderson v. Purdue Pharma L.P.*,

2020 WL 428112, at *3 (E.D. Ky. Jan. 27, 2020). And if "the jurisdictional issue appears factually or legally difficult," courts "determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." *Id.* (citation omitted). Here, federal jurisdiction plainly exists, and any jurisdictional issues are both "difficult" and "similar" to issues raised by more than 140 other cases that were removed on the same grounds and are currently pending in the Opiate MDL. *See* ECF No. 1, Ex. 9.

Walmart respectfully requests the Court stay this case pending the JPML's imminent transfer decision.

## BACKGROUND

Plaintiffs filed this action on July 21, 2020, alleging claims related to prescription opioid medications. Plaintiffs seek damages on behalf of themselves and their citizens, contending that Walmart is liable for injuries incurred by residents of the Counties as a result of the misuse of prescription opioid medications and for the costs incurred by Plaintiffs in addressing the prescription opioid epidemic. *See, e.g.*, ECF No. 1, Ex. 1 (hereinafter "Compl.") ¶ 181 ("The Counties' damages include . . . increased emergency response costs, law enforcement costs, incarceration costs, court administration costs, addiction treatment costs, and medical costs caused by Walmart's conduct in creating and exacerbating the opioid epidemic."); *id.* ¶ 182 ("The opioid epidemic has caused the Counties to suffer future damages in the form of the increased expenses in providing public services . . . ."). Plaintiffs' Complaint asserts seven causes of action against Walmart: (1) Negligence/Gross Negligence; (2) Common Law Public Nuisance; (3) violating the Arkansas Uniform Narcotic Drug Act ("AUNDA"), Ark. Code Ann. §§ 20-64-101, *et seq.*; (4) acting as an accomplice to AUNDA violations; (5) possessing, delivering, and trafficking controlled substances in violation of the Arkansas Controlled Substances Act ("ACSA"), Ark. Code Ann. §§ 5-64-419, 5-64-424, 5-64-426, 5-64-427, 5-64-440; (6) acting as an accomplice to

ACSA violations; and (7) violating the Arkansas Drug Dealer Liability Act ("ADDLA"), Ark. Code Ann. §§ 16-124-101, *et seq.* *See* Compl. ¶¶ 161–247.

On August 20, 2020, Walmart timely filed a notice of removal of this case. *See* ECF No. 1. Walmart tagged the case for transfer to the Opiate MDL on August 21, 2020.[1] *See In re Nat'l Prescription Opiate Litig.*, No. 2804, ECF No. 8313 (J.P.M.L. Aug. 21, 2020). On August 24, 2020, Plaintiffs filed a motion to remand. *See* ECF No. 7. On August 28, 2020, the JPML issued CTO-170, conditionally transferring this case to the Opiate MDL. *See* **Exhibit 10**.

## ARGUMENT

This Court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Accordingly, "[a] district court has broad discretion to stay proceedings when [doing so is] appropriate to control its docket." *Sierra Club v. U.S. Army Corps of Eng'rs*, 446 F.3d 808, 816 (8th Cir. 2006). Three factors are considered to determine whether a stay is appropriate: "(1) the stay does not prejudice the non-movant; (2) the movant would suffer hardship and inequity without a stay; and (3) the stay serves the interests of judicial economy and efficiency." *Simpson v. Wright Med. Tech., Inc.*, 2020 WL 3318001, at *1 (E.D. Ark. June 18, 2020) (quoting *Adams v. Tyson Foods, Inc.*, 2007 WL 1539325, at *1 (W.D. Ark. May 25, 2007)). Because the last factor—judicial economy—is the most relevant to this motion, Walmart will address the factors in reverse order.

---

[1] The Clerk of this Court similarly reached out to the JPML on August 24, 2020 to inform the JPML that this case may be related to those already pending in the Opiate MDL.

## I. A STAY IS WARRANTED TO PROMOTE JUDICIAL ECONOMY AND STRIKE THE APPROPRIATE BALANCE OF HARDSHIPS

This Court should grant Walmart's motion to stay because a stay will conserve the parties' and Court's resources, avoid duplicative litigation, and prevent inconsistent rulings.

### A. A Brief Stay is Necessary to Promote Judicial Economy.

A stay under these circumstances would promote judicial economy because it would conserve the parties' and Court's resources, as well as avoid duplicative litigation. *See, e.g.*, *Novartis AG v. Ezra Ventures, LLC*, 2015 WL 4197692, at *5 (E.D. Ark. July 10, 2015) (granting motion to stay in part because of "the goal of avoiding duplicative litigation"). If the JPML transfers this case to the Opiate MDL, the transferee judge can rule on all of the pending motions that present the same or similar issues. *See, e.g.*, *Tye v. St. Luke's E. Anesthesia Servs., P.C.*, 2019 WL 2189522, at *2 (W.D. Mo. May 21, 2019) (granting stay because "[d]efendants are highly likely to be subject to prejudice in the form of duplicative litigation and inconsistent rulings if this case is not stayed" and "if this case is accepted for transfer to the MDL, it would avoid duplicative litigation"). Indeed, as one district court observed when it stayed two very similar opioid cases (now transferred to the Opiate MDL):

> [T]he sheer number of related cases, many of which also involve the same jurisdictional issues, weighs in favor of a stay in the interests of judicial economy. . . . The similarity between these cases and others is underscored by the JPML's recognition of the existence of common questions of fact. . . . The court system's interest in judicial economy, fairness, and consistency is the factor that weighs most heavily in favor of granting a stay in this case. Given the fact that thousands of similar cases have been transferred already, and the likelihood of many more cases being in a similar procedural posture, the interests of judicial economy and the threat of inconsistent rulings outweighs any potential prejudice to the Plaintiffs in these two cases.

*City of Henderson v. Purdue Pharma L.P.*, 2020 WL 428112, at *4 (E.D. Ky. Jan. 27, 2020).

Consistent with this logic, scores of courts across the country have concluded that a stay is appropriate in opioid cases. *See, e.g.*, Order at *4, *City of Orlando v. CVS Health Corp.*, No. 6:20-

cv-000736 (M.D. Fla. June 15, 2020) ("Ruling on the Remand Motion now when the JPML may transfer the case to the Opiate MDL would risk inconsistent rulings and waste judicial resources.") (previously attached as ECF No. 1, Ex. 2); Order at *4, *City of Fairfax v. Mallinckrodt PLC*, No. 1:20-cv-00218 (E.D. Va. Apr. 30, 2020) (granting motion for stay in part because "[j]udicial review of threshold [jurisdictional] issues is a prime opportunity for judicial economy and efficiency in a centralized MDL") (previously attached as ECF No. 1, Ex. 3); Order at *5, *Dallas Cty. Hosp. Dist. – Parkland Mem'l Hosp. v. Amneal Pharm., Inc.*, No. 4:19-cv-04834 (S.D. Tex. Jan. 28, 2020) ("Granting a stay would further judicial economy by avoiding duplicative litigation and preventing inconsistent rulings. If the JPML transfers this case to the Opiate MDL, Plaintiffs will have the opportunity to present their motion to remand to Judge Polster, where it may be addressed along with other pending motions to remand using a unified framework.") (previously attached as ECF No. 1, Ex. 4); *see also* Manual for Complex Litigation (Fourth) § 22.35 (2004) ("A stay pending the Panel's decision can increase efficiency and consistency, particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well."). This includes courts in the Eighth Circuit.[2]

Given that the JPML and the Opiate MDL have seen and already have pending scores of similar cases with similar removal issues, issuing a stay until the JPML decides whether to finalize the transfer of this action to the Opiate MDL is the most efficient approach.

**B. A Stay Will Cause Minimal, If Any, Prejudice to Plaintiffs.**

Staying this action until the JPML can determine whether to grant the transfer will prevent

---

[2] *See, e.g.*, *Henry Cty. v. Allergan PLC*, No. 4:20-cv-00077, ECF No. 19 (E.D. Mo. Feb. 6, 2020) (order granting temporary stay); *Pike Cty. v. Allergan PLC*, No. 4:19-cv-03170, ECF No. 22 (E.D. Mo. Jan. 16, 2020) (order granting temporary stay); *Camden Cty. v. Williams*, No. 4:19-cv-02930 (E.D. Mo. Dec. 26, 2019) (order granting stay) (previously attached as ECF No. 1, Ex. 5).

conflicts between pre-trial rulings made by this Court and subsequent decisions of the Opiate MDL. As other courts have recognized, a temporary stay in this situation will ensure consistent adjudication of the issues this case shares with others in the Opiate MDL.[3] *See, e.g.*, *Tye*, 2019 WL 2189522, at *2. For example, in *Noble County ex rel. Noble Cty. Comm'rs v. Cardinal Health*, No. 2:18-cv-01379 (S.D. Ohio) ("*Noble Cty.*"), the defendants filed a motion to stay and the plaintiff county responded with a motion to remand. *See Noble Cty.*, ECF No. 25 (Nov. 21, 2018) (motion to stay); *id.*, ECF No. 26 (Nov. 29, 2018) (motion to remand). The Southern District of Ohio deferred decision on the merits of plaintiff's remand motion to Judge Polster. *See* Order at *2, *Noble Cty.* (Dec. 14, 2018) (attached as **Exhibit 11**). In so doing, Chief Judge Edmund A. Sargus, Jr. observed: "Plaintiff's jurisdictional concern is capable of arising in several of these prescription opioid cases across the country. As such, this Court declines to rule on the merits of Plaintiff's Motion to Remand and defers that decision to Judge Polster . . . to determine where the case should be." *Id*. at *1–2 (citations omitted). The court further explained in its order granting defendants' motion to stay: "If numerous courts, including this Court, proceed with pretrial matters in advance of the JPML's decision, then the efforts of the courts and litigants may be needlessly repeated. This duplicative litigation could cause hardship and inequity to the moving party." *Noble Cty. ex rel. Noble Cty. Comm'rs v. Cardinal Health*, 2019 WL 311807, at *2 (S.D. Ohio Jan. 24, 2019). The court recognized that if the case were transferred, "the MDL court will add the case to those in which it is considering any and all pretrial matters." *Id*.

Similarly, in *County of Jim Hogg v. CVS Health Corp.*, No. 4:19-cv-02816 (S.D. Texas) ("*Jim Hogg*"), defendants moved to stay the action pending transfer to the JPML, *see Jim Hogg*,

---

[3] Indeed, in September 2018, Judge Polster issued an opinion resolving a complicated federal officer removal question that had been presented in multiple cases, ruling that removal was proper. *See In re Nat'l Prescription Opiate Litig.*, 327 F. Supp. 3d 1064 (N.D. Ohio 2018).

ECF No. 5 (Aug. 19, 2019), and plaintiff sought remand, *id.*, ECF No. 7 (Aug. 20, 2019). Finding that the case presented "similar removal issues" as the cases consolidated in the Opiate MDL, the court granted a stay. Order at *3, *Jim Hogg* (Sept. 4, 2019) (previously attached as ECF No. 1, Ex. 7). The court reasoned: "Other cases consolidated before the MDL transferee court in Ohio present similar removal issues, making a stay appropriate to avoid duplicative litigation of those issues, to improve judicial economy, and to reduce the risk of inconsistent results." *Id.* That case has since transferred to the Opiate MDL. And in *Takoma Regional Hospital v. Purdue Pharma, L.P.*, No. 2:19-cv-157 (E.D. Tenn. Oct. 4, 2019), the court found the case was just "like so many others around the nation," and granted a stay to allow Judge Polster to "issue a uniform ruling on the matter, minimizing the risk of inconsistency." *Id.* at *1, 3–4 (previously attached as ECF No. 1, Ex. 6). Indeed, more than 140 cases raising similar federal-question jurisdictional issues have been transferred to the Opiate MDL over plaintiffs' objection or after being stayed. *See* ECF No. 1, Ex. 9.

This is precisely the goal of the Opiate MDL—to consolidate these actions in a single court to "substantially reduce the risk of duplicative discovery, minimize the possibility of inconsistent pretrial obligations, and prevent conflicting rulings on pretrial motions." *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d at 1379; *see also* Minute Entry Granting Mot. to Stay, *Vill. of Melrose Park v. McKesson Corp.*, No. 1:18-cv-05288 (N.D. Ill. Aug. 10, 2018) ("[T]he JPML has determined that centralization of opioid litigation is proper due to common questions of fact and that transfer should not be delayed pending rulings on remand motions."). Permitting this case to proceed on a separate track would frustrate the JPML's creation of the Opiate MDL. In order to ensure consistent rulings on ***all*** theories of removal among identically situated plaintiffs, a stay is likewise needed here.

Plaintiffs' motion to remand points to other federal court opinions granting remands in opioid cases, including one from the Western District of Arkansas, *see Fayetteville Ark. Hosp. Co. v. Amneal Pharm., LLC*, 2020 WL 2521515 (W.D. Ark. May 18, 2020). *See* ECF No. 7 at *3–4, 9–12. However, those cases are out of step with the far greater number of decisions cited here granting stays pending transfer to the Opiate MDL. *See* ECF No. 1, Ex. 9. Indeed, assessing these contrary decisions against the more than 140 other instances where federal judges have stayed cases or allowed them to transfer to the Opiate MDL over plaintiffs' remand motions underscores the need for the uniformity that the Opiate MDL—and ***only*** the Opiate MDL—provides.[4] *See supra* pp. 5–6.

In particular, *Fayetteville* is not binding on this Court and is not in accord with the most recent Eighth Circuit precedent. The *Fayetteville* court concluded that no federal question existed because plaintiffs ostensibly "relied on state statutory and common law theories for each of their claims" and whether those were an "adequate basis for the duties [plaintiffs] ascribe to Defendants" was "a matter of state law and will not require any interpretation or application of the CSA." 2020 WL 2521515, at *2. However, that approach is out of step with the Eighth Circuit's recent guidance in *Wullschleger v. Royal Canin U.S.A., Inc.*, 953 F.3d 519 (8th Cir. 2020), which was decided shortly before the *Fayetteville* court issued its opinion. *Wullschleger* was not brought to

---

[4] Plaintiffs' citation to two opinions by the Opiate MDL court are misleading. First, *In re National Prescription Opiate Litigation*, 2019 WL 180246 (N.D. Ohio Jan. 14, 2019), involved a case brought by the Commonwealth of Kentucky, and the Opiate MDL court had "already recognized that it has no jurisdiction over state cases filed by state attorneys general." *Id.* at *2. There, principles of comity favored the State's choice of forum. *See Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 21 n.22 (1983) ("[C]onsiderations of comity make us reluctant to snatch cases which a State has brought from the courts of that State . . . ."). Indeed, many of Plaintiffs' contrary citations are to cases brought by states. *See* ECF No. 7 at *10–12. And *In re National Prescription Opiate Litigation*, 2018 WL 4019413 (N.D. Ohio Aug. 23, 2018), involved an entirely different federal statute as grounds for removal—regulations promulgated by the Food & Drug Administration ("FDA"). *Id.* at *3.

the *Fayetteville* court's attention by either party and was not cited in the court's decision. Applying *Wullschleger* to this case dictates a different outcome. In *Wullschleger*, plaintiffs included Missouri state law antitrust and unjust enrichment claims related to the labeling of pet food. *See* 953 F.3d at 520. The Eighth Circuit did not stop its analysis with the fact that plaintiffs alleged state law causes of action, but rather examined the allegations supporting those causes of action to determine whether their adjudication would turn on the consideration of federal law. *See id.* at 521–22. It determined that the alleged violations of Missouri law were "premise[d]" on the "claim that the defendants violated the FDCA, were non-compliant with FDA guidance, and that their refusal to submit . . . . to FDA review was improper." *Id.* at 522. Ultimately, the Eighth Circuit found federal-question jurisdiction because "[p]laintiffs' dependence on federal law permeates the allegations such that the antitrust and unjust enrichment claims cannot be adjudicated without reliance on and explication of federal law." *Id.*[5]

That same "dependence" exists here. For example, Plaintiffs' allegation that Walmart violated Arkansas law by failing to "maintain effective controls against diversion," Compl. ¶ 166, is "premise[d]" on citations to federal law, *see id.* ¶ 60 (citing 21 U.S.C. § 823(a)–(b); 21 C.F.R. §§ 1301.74); *id.* ¶ 62 (citing 21 C.F.R. §§ 1301.71(a), 1306.04(a)), and Walmart's alleged non-compliance with DEA guidance, *see id.* ¶ 63 n. 32 (citing DEA orders); *id.* ¶¶ 64–68 (citing DEA testimony in the Opiate MDL and orders). Plaintiffs included more than 30 paragraphs alleging violations of the CSA and DEA guidance regarding the CSA. *See, e.g., id.* ¶¶ 51, 59, 60, 62–76, 81–92, 103–04, 130–31, 136; *see also Wullschleger*, 953 F.3d at 522 (finding federal-question

---

[5] The Eighth Circuit also noted that plaintiffs included declaratory and injunctive relief that targeted federal law, but the Eighth Circuit's analysis of the relationship between state law claims and federal law allegations was not dependent on that portion of its opinion. *See Wullschleger*, 953 F.3d at 522 (noting its decision considered both the "allegations in the complaint and relief sought").

jurisdiction exists where plaintiffs "rely explicitly on federal law throughout their pleadings"). Plaintiffs are relying solely on federal law and will do so throughout the rest of this case.

Indeed, plaintiffs in the Opiate MDL demonstrated precisely that fact during summary judgment proceedings, where they filed a motion (in support of, among other claims, alleged violations of Ohio's RICO statute and public nuisance law) asking Judge Polster to rule that registrants under the federal CSA have a statutory and regulatory duty to monitor, investigate, and halt suspicious orders. *See* Br. at \*3–9, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 1887 (N.D. Ohio July 19, 2019). In its August 19, 2019 opinion and order, the court considered the CSA and DEA's implementing regulations and the duties imposed by them, and "examine[d] what the Defendants actually did compared to what the law requires." *See* Order at \*5, *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804, ECF No. 2483 (N.D. Ohio Aug. 19, 2019). Similarly, plaintiffs in the Opiate MDL and the New York state cases have both offered analysis from James Rafalski, a former DEA investigator, in support of their state law claims. Tellingly, Mr. Rafalski's reports rely exclusively on analysis of federal law, federal regulations, and DEA guidance. For example, Mr. Rafalski's New York report spends thirty pages analyzing the "applicable regulatory mechanisms," without citing to New York law a single time. *See In re Opioid Litig.*, Index No. 400000/2017, NYCSEF Doc. No. 5214 at \*12–41 (N.Y. Sup. Ct. Suffolk Cty. Mar. 4, 2020). Instead, Mr. Rafalski analyzes the federal CSA, its regulatory framework, and various DEA guidance and administrative actions. *See id.* Plainly, the federal issues are central to Plaintiffs' claims, and should be determined by the federal courts.[6]

---

[6] Citing *Merrell Dow*, the *Fayetteville* court also pointed to the absence of a private cause of action under the CSA to support its decision. *See* 2020 WL 2521515, at \*3. But as the Eighth Circuit explained in *Wullschleger*, "*Merrell Dow* read as a whole did not 'overturn[] decades of precedent.'" 953 F.3d at 521 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 317 (2005)); *see also, e.g.*, *Ranck v. Mt. Hood Cable Regulatory Comm'n*, 2017 WL

In short, the great weight of authority favors staying opioid cases pending their transfer to the Opiate MDL. And because of those decisions by scores of other judges, a ruling by this Court on a remand motion raises significant risks of inconsistency. This Court should issue a stay to ensure consistent rulings on these jurisdictional issues. *See* Order at *3, *Bd. of Cty. Comm'rs of Seminole Cty. v. Purdue Pharma, LP*, No. 6:18-cv-00372 (E.D. Okla. Apr. 3, 2019) ("If all proceedings are not stayed at this time, defendants will suffer a hardship to the extent that they are subjected to a risk of inconsistent rulings on the same jurisdictional questions that are raised in plaintiff's remand motion and in many cases already before the MDL court.") (previously attached as ECF No. 1, Ex. 8).

### C. The Balance of Equities Favors a Stay.

Although Walmart would be harmed by the risk of inconsistent rulings and dual-tracked litigation if a stay is denied, Plaintiffs cannot identify any substantive prejudice they would suffer as the result of a stay. If the JPML transfers this case to the Opiate MDL, that Court will ultimately decide Plaintiffs' motion to remand. This will guarantee consistent results with respect to both Plaintiffs and other similarly situated plaintiffs. And if the JPML decides against transferring this case to the Opiate MDL, this Court may hear and decide Plaintiffs' motion to remand at that time.

Any stay pending a transfer decision would be short-lived. If Plaintiffs oppose transfer, the JPML will make a final transfer decision at one of its upcoming hearings. *See, e.g.*, *Estate of Hoholek v. AbbVie, Inc.*, 2014 WL 7205586, at *3 (N.D. Ind. Dec. 17, 2014) (concluding any delay to proceedings would be "slight" given that "a decision on whether this case will also be transferred is expected shortly"); *Hood ex rel. Mississippi v. Bristol-Myers Squibb Co.*, 2013 WL 30098, at

---

1752954, at *4–5 (D. Or. May 2, 2017) (concluding state law claims based on violations of Cable Communications Policy Act raised substantial federal questions and satisfied Grable even though no private right of action exists under the Act).

*2 (N.D. Miss. Jan. 2, 2013) (granting motion to stay, reasoning that there would be no prejudice from a stay of "approximately three months," the time in which the JPML was expected to issue a final transfer decision); *Fowler v. Hamilton Med. Ctr., Inc.*, 2008 WL 11336192, at *2 (N.D. Ga. May 7, 2008) (holding that parties opposing stay pending transfer to MDL would suffer "little, if any, prejudice from such a short stay" of "two to three months").[7]

Plaintiffs complain that their case will "sit in abeyance" if transferred to the Opiate MDL. ECF No. 7 at *4. But numerous courts have already rejected that concern. *See, e.g.*, *Henderson*, 2020 WL 428112, at *4 ("To acknowledge such an argument as persuasive would call into question the usefulness of any MDL proceeding."); *see also* Order at *5, *City of Orlando* ("As to Plaintiff's prejudice, any delay from the stay would be minimal as transfer briefing closes [in the near future] and a decision is expected soon after . . . .") (previously attached as ECF No. 1, Ex. 2); Order at *5, *City of Fairfax* ("[B]oth parties will benefit from centralized litigation at this stage.") (previously attached as ECF No. 1, Ex. 3); Order at *3–4, *Takoma Reg'l Hosp.* (explaining "months of delay in a case that would . . . probably take years to resolve is [not] likely to yield serious prejudice," but rather, is "simply the price of uniformity, which has long been—and for good reason—a central goal of the federal judiciary") (previously attached as ECF No. 1, Ex. 6).[8]

At bottom, it makes little sense for this Court to undertake resolution of the complex

---

[7] *See also, e.g.*, Order at *3, *Jim Hogg* ("The potential prejudice to the County if a stay is granted is from delay. That potential for prejudice is reduced by the relatively expeditious pace of the JPML's decision on transfer.") (previously attached as ECF No. 1, Ex. 7).

[8] The *Fayetteville* court stated that "[h]aving concluded that removal was improper, this Court need not reach and weigh the factors relevant to whether to a stay is appropriate." *Fayetteville*, 2020 WL 2521515, at *3. Nevertheless, the court also stated that it believed "the interest of judicial economy and efficiency weigh against a stay in this case." *Id.* But the court's view that "there is no meaningful harm to Defendants of having this Court decide the jurisdictional issue" is premised on its decision being correct and consistent with other decisions, which it is not for the reasons stated above. *Id.*

removal issues presented in this case before the JPML has had a chance to render a final transfer decision, especially since the same issues are already before Judge Polster in more than 140 cases. *See* ECF No. 1, Ex. 9. A stay in this case will ensure consistent adjudication of these jurisdictional issues.[9]

## II. A STAY IS ALSO WARRANTED UNDER A "PRELIMINARY ASSESSMENT" OF JURISDICTION.

Considerations of judicial economy and the balance of the hardships directs a stay. Although this Court's analysis can and should stop there, a stay is also warranted under a "preliminary assessment" of this Court's jurisdiction. The question for courts conducting a preliminary assessment is "whether there is any reasonable possibility that federal jurisdiction exists" or "whether federal jurisdiction is *clearly* absent." *Henderson*, 2020 WL 428112, at *3 (emphasis in original); *see also Beshear v. Volkswagen Grp. of Am., Inc.*, 2016 WL 3040492, at *3 (E.D. Ky. May 25, 2016) (same). And if "the jurisdictional issue appears factually or legally difficult," this Court should "determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." *Henderson*, 2020 WL 428112, at *3 (citation omitted); *see also Beshear*, 2016 WL 3040492, at *3 (same).

This case easily meets both parts of the preliminary assessment analysis. There is more than a reasonable possibility federal jurisdiction exists. Plaintiffs' complaint raises a federal

---

[9] Plaintiffs' arguments that their case is "urgent" and must be separately considered ahead of all of the opioid cases transferred and pending in the Opiate MDL are contrived. Opioid litigations have been proceeding for years. The Opiate MDL was created nearly three years ago. And these same Plaintiffs joined a case involving every other Arkansas county and the State of Arkansas against a group of more than thirty manufacturers, distributors, retailers, and prescribers of opioids more than two years ago. *See State of Arkansas ex rel, Scott Ellington v. Purdue Pharma, L.P.*, Case No. 18CV-2018-268 (Cir. Ct. Crittenden Cty.). Walmart is not a party to that case. Having named Walmart in a separate opioid case multiple years after-the-fact, Plaintiffs cannot complain about a short delay to resolve these jurisdictional issues.

question because the sole source of Walmart's alleged duties underpinning this case is the federal Controlled Substances Act ("CSA").  *See supra* pp. 10–12; *see also* ECF No. 1 ¶¶ 24–31.  And as noted above, the precise jurisdictional issue raised here has been raised in more than 140 other cases that are already pending before the Opiate MDL.  *See* ECF No. 1, Ex. 9.  Numerous courts handling substantively identical opioid cases have found stays appropriate for precisely those reasons.  *See, e.g.*, Order at *2, *Marion Hosp. Corp. v. Abbott Labs.*, No. 1:20-cv-04111 (N.D. Ill. Aug. 25, 2020) ("[T]he Court's preliminary assessment of the motion to remand suggests the issues implicated are not as straightforward as Plaintiffs contend, and this conclusion is bolstered by the line of cases cited by [defendants] finding the same.") (attached as **Exhibit 12**); Order at *5, *Dallas Cty. Hosp. Dist.* (staying case because of "the difficulty of the jurisdictional issue" and the fact that "[o]ther cases consolidated before the MDL in Ohio present similar removal questions") (previously attached as ECF No. 1, Ex. 4); *Henderson*, 2020 WL 428112, at *3 ("The jurisdictional issues present in the briefing involve colorable arguments on each side . . . includ[ing] . . . whether Plaintiffs' underlying theory of liability is in fact based on legal duties arising under the federal Controlled Substances Act, 28 U.S.C. § 1331, such that federal question jurisdiction is proper."); Order at *4, *Jim Hogg* (explaining the case "presents factually and legally difficult issues" and "[o]ther cases consolidated before the MDL transferee court in Ohio present similar removal issues, making a stay appropriate to avoid duplicative litigation of those issues, to improve judicial economy, and to reduce the risk of inconsistent results.") (previously attached as ECF No. 1, Ex. 7).  The Opiate MDL is where the jurisdictional issues should be decided.

**CONCLUSION**

For the foregoing reasons, Walmart requests respectfully that this Court stay all proceedings in this case pending the JPML's final ruling on whether this case will be transferred to the Opiate MDL.

| | |
|---|---|
| DATED: August 31, 2020 | John E. Tull III (84150)<br>R. Ryan Younger (2008209)<br>QUATTLEBAUM, GROOMS & TULL PLLC<br>111 Center St., Ste. 1900<br>Little Rock, Arkansas 72201<br>Tel: (501) 379-1700<br>Fax: (501) 379-1701<br>jtull@qgtlaw.com<br>ryounger@qgtlaw.com<br><br>Vincent O. Chadick (94075)<br>QUATTLEBAUM, GROOMS & TULL PLLC<br>4100 Corporate Center Drive, Suite 310<br>Springdale, Arkansas 72762<br>Tel: (479) 444-5200<br>Fax: (479) 444-6647<br>vchadick@qgtlaw.com<br><br>Christopher Lovrien*<br>Erin L. Burke*<br>JONES DAY<br>555 S. Flower St., 50th Floor<br>Los Angeles, CA 90071<br>Tel: (213) 489-3939<br>Fax: (213) 243-2539<br>cjlovrien@jonesday.com<br>eburke@jonesday.com<br><br>*National counsel who will seek pro hac vice admission.<br><br>*Counsel for Defendants Walmart Inc., Wal-Mart Stores East, LP, WSE Management, LLC, WSE Investment, LLC, and Wal-Mart Stores East, LLC* |